The case for argument this morning is United States v. Cannel. Good morning, and may it please the court and counsel, my name is Tracy Staub, and I'm here on behalf of my client, James Cannel. When the government volunteers that a plea agreement is inaccurate or incomplete, the government breaches the plea agreement, even if it simultaneously states that it will stand by its stipulation in the plea agreement. In this case, the government and Mr. Cannel entered into a plea agreement where they calculated the adjusted offense level of Mr. Cannel's crime based upon the guidelines. However, after the pre-sentence investigation report returned, indicating that the guidelines were miscalculated in the plea agreement and suggesting a higher base offense level, the government attempted to distance itself from its plea agreement and suggest the base offense level in the pre-sentence investigation report was correct. And it did this in three ways. It did this by arguing against instead of for acceptance of responsibility, by volunteering evidence to support the distribution enhancement, and by arguing that the base offense level should be increased by five levels instead of two levels for the number of images as suggested in the plea agreement. The Ninth Circuit and the Supreme Court have a long history of strictly enforcing plea agreements, whether it's against the government or against the defendant. Simply put, the parties shouldn't be allowed to undermine a plea agreement in the manner that was done in this case. Suppose we enforce the plea agreement and require the application guidelines at offense level 25. The sentence under that would be within one month of the sentence he actually received. So where is this substantial injustice as a result of the breach of the plea agreement? Well, Your Honor, if the Court applies a plain error review, which, of course, requires Mr. Cannel to show that a substantial interest was affected by the breach, the substantial interest, of course, is not a particular sentence. Substantial interest is presenting a unified front before the sentencing court. So in this case, he's not guaranteed a particular sentence. He's not guaranteed a 71-month sentence or a 72-month sentence. He is bargained for and pled guilty based upon the promise that the government would stand by him before the sentencing judge and present that unified front. That sounds like an abstraction. In the real world, he came out about the same way as he would have if the plea agreement had been enforced. Well, we don't know that, Your Honor. We don't know if the sentencing judge would have gone even lower than the 72 months had the government stood by its agreement and presented a unified front. That's pure speculation. That's true, Your Honor. But what isn't speculation is that the government didn't stand by its plea agreement and didn't present a unified front. And it's that unified front that we're concerned with here, not the particular sentence. I don't understand what difference the unified front makes, if the end result is substantially the same as would have occurred if there had been a unified front, that is, if the plea agreement had been enforced. Well, I think that the Supreme Court in Santabello explains that, Your Honor. I think what they argue there is that we're not particularly concerned about whether  But the facts are very different in Santabello. Yes, but the legal holding is the same. And basically the question is whether there was a material breach of the plea agreement and whether the integrity of the judicial system is affected because of that breach of the plea agreement. So I think that to focus on what could have been the sentence or what may have been the sentence is to shift the focus away from the real issue, which is whether or not a unified front was presented. Otherwise, would you really be straying into harmless error almost, which I don't think is appropriate. Well, Your Honor. I mean, if you go into the sort of, well, it might not matter. Right. And in many cases, this Court has held that breaches of plea agreement aren't the harmless error analysis doesn't apply to breaches of plea agreement in the sense that you look at the sentence that could have been imposed. And the Court has done that in several cases. Now, under a plain error analysis, harmless error and affecting a substantial right are essentially the same analysis. So if you consider, if you apply this Court's harmless error analysis to whether a substantial right was affected, it's still the same. We're not looking at whether a particular sentence could or could not have been imposed. We're looking at whether the government failed to enforce the agreement and failed to present a unified front. Well, on some level, I have difficulty with the notion that we're not looking at the sentence, because the sentence is the only thing that matters. I mean, your client does not directly impact, is not directly impacted on whether there's a unified front. Your client's affected by how many months he's required to serve. And if, in the end, it doesn't look like the number of months he was required to serve changes one bit because the sentencing court took over sentencing for itself, it still becomes difficult, particularly under a plain error standard, to figure out, well, where exactly is this substantial injustice, if the end result is going to be the same? I understand that, Your Honor. But I think that this Court and the Supreme Court do have a long history of enforcing plea agreements for the sake of the judicial integrity and not so much concerned with the individual parties before the Court. It's an integrity issue. And they've said, you know, when defendants come up here and try and get out of plea agreements, the Court has said, no, you know, you're going to have to show a substantial reason for getting out of plea agreements. When the government comes before and says, we, you know, did the government breach the plea agreement, this Court has said, no. Plea agreements are strictly enforced. And the end result, the end sentence is really not something that the Court considers. And who knows, Mr. Kennedy? It could be, even though it's within a month, it would be within a month of recalculations, that doesn't mean the judge would go to that level. It doesn't, Your Honor. I mean, Mr. Connell could go back and get the same sentence that he got here, you know, and I've explained that to him. But the truth is, is that's not what we're concerned about here. It's an integrity issue. He's not asking for a windfall. He's not asking for a different sentence. He's just asking for the benefit of his plea agreement, to stand before the sentencing judge with a unified front. That's all he does. That's a little bit different maybe than I read it. So if he's – if when he goes back there, he's not going to ask for a different sentence? Well, he's going to ask for the sentence that he asked for under the plea agreement. And the government needs to stand beside him and say, this is the plea agreement. They don't even need to enthusiastically support the plea agreement. But what they can't do is volunteer additional information to support a base offense level that's different than what it agreed to in the plea agreement. If the court asks the government directly, is this calculation correct, the government would be obligated, ethically obligated, to say yes and then silence. But that's not what happened here. The government clearly thought, oops, I miscalculated the guidelines, and then attempted to distance itself from the plea agreement and support the pre-sentence investigation report while doing that. So, again, all we're asking here – And did that affect the sentence? I don't know, honestly, Your Honor. And I don't think that that's an issue that this Court needs to decide. Well, I guess in – let's not do it at this level. Let's put it back into the district court. Okay. Could that have affected the sentence before the district judge? It could have, Your Honor. And the reason that I say that is because the government argued for a 96-month sentence, which was at the high end of the range that it thought it could calculate, given the acceptance of responsibility. But the government's own expert came in and said, Mr. Cannell is not a danger to society. And the district court took that very seriously, which is one of the reasons why it came all the way down to 72 months. Now, had the government stood by its plea agreement and said that the sentencing range is 57 to 71 months, and our own expert recommends that he's not a danger to society, there's a good possibility that his sentence could have been lower. So you want us to remand for resentencing? That's all we want, Your Honor. With the plea agreement. Without instructions. Remand for resentencing, without instructions, just enforce the plea agreement, require the government to stand by him, present a unified front, and not volunteer that the plea agreement is inaccurate or incomplete. That's all he wants, and he may end up with the same sentence, and he knows that. Or he may get, conceivably, he might get a higher sentence. He might get a higher sentence. Or he might get a lower sentence. And he might get a lower sentence. All of everything is back on the table. Right. Okay. Thank you. Good morning. May it please the Court. My name is Jill Bolton, and I represent the United States in this matter. From the defendant's argument in this case, it seems like they want to agree to a reasonable agreement to be strictly construed, but only as it pertains to the government. What seems to be missing, I think, from the picture here is that the government's response and the government's argument to the district court at sentencing related directly to what the defendant put in front of the sentencing judge. As the Court will recall from the plea agreement, both parties had the ability to argue for either end, up to the maximum guideline range in the government's side. They have the opportunity to argue for a downward departure. The real issue is over the distribution enhancement, right? Because the other things kind of fall away. But the distribution enhancement was raised by the pre-sentence report. So the defendant responded to that. Now, you treat that as a breach of the plea agreement by the defendant. And I think maybe, and this maybe had been my fault in not articulating this specifically enough to the Court, but it's all here in what's before the Court now. What the defendant also presented, besides just, you know, there shouldn't be five levels and here's why, based on this, you know, technical computer analysis, which is what he presented to the Court. He had, first of all, he had admitted in the plea agreement that he had distributed. So that kind of worked into our response as it related to the acceptance of responsibility. But the important part that he also admitted in support of his position was an entire sentencing memorandum that dealt with his defense, his the mitigating circumstances, why he wasn't a predator. He submitted a report from a psychologist, Dr. Jules Burstein. Is that a violation of the plea agreement? Well, that's that played into. Where? Well, it wasn't a violation. The problem I'm having is that the plea agreement is pretty clear about the distribution and then it's also pretty clear about the government's obligation on the acceptance, and it seems that neither of those things happened. Well, what happened was the defendant submitted a sentencing memorandum that the government strongly believed was not accurate, which was disingenuous, which was not truthful with the Court. So that related to our response concerning the acceptance of responsibility. You see that kind of issue. But if you have, if the – let's just take that and separate it from the distribution, because there's two issues then. On the acceptance of responsibility, if the Court, as a matter of law, made the findings as to the first two aspects of that, where does that – that doesn't leave any leeway, does it? Well, I'm – And the government had an obligation that it agreed to. The government agreed that it would – it would, provided the defendant met the requirements of the plea agreement, which I think are set forth real clearly in what we submitted to the Court with the plea agreement, which is the defendant had to do certain things to get the acceptance. He had to truthfully disclose, first of all, the information, and he had to do certain things to get the acceptance of responsibility.  And then he had to do certain things to get the acceptance of responsibility concerning the plea. It's at page 5, excuse me, of our – of our brief where we outline exactly what he agreed to do. He had to plead guilty, demonstrate a recognition and affirmative acceptance of responsibility for the criminal conduct, and provide complete and accurate information during the sentencing process and not commit any obstructive conduct. That was in the plea agreement, and that's at page 5 of our response brief. Those things he had to do in order to get the government's recommendation. The government disagreed that he what – that he complied with that because of the submissions he made in his sentencing memorandum. It's one thing to say, okay, we agree to these enhancements, which is what the government did. We agree that these are the enhancements that apply. And I think all the parties agreed ultimately that we got it wrong. We made a mistake. Kennedy. You mean on those images? On the number of images. We agree. Okay. But now you're shifting from acceptance of responsibility to the images, and that's what's one of the problems here. You're right. But they kind of – they interplay. Well, they do and they don't, really, because, I mean, you have this pre-sentence report, which, from the defense standpoint, you can't just leave hanging out there. So let's stick with the adjustment of 3E1. I'm sorry. Stick with the adjustment for the acceptance? Yes. Okay. The defendant claims that he didn't provide any additional information. We think he did. He provided this Dr. Burstein report, pages 9 through 13 of the confidential supplemental excerpts that we filed with the court. He attached those to his sentencing memo. He denied, he minimized, he said to the court this was pure fantasy. He said, I never distributed, there's no evidence of any distribution. But, you know, what bothers me about that is he was – the defendant was over a barrel. The pre-sentence report came in and recommended the distribution enhancement. What was he supposed to do, stand silent? Right. I think at that point we – But your agreement was that he wouldn't get – in effect, that he wouldn't get a two-level enhancement for distribution. But yet he would have gotten it, contrary to the plea agreement, if he hadn't opposed the pre-sentence report. So he was between a rock and a hard place. I think what should have happened at that point was the defendant should have said, look, we don't have a plea agreement. We got it wrong. We're not comfortable with this sentence. And government, we know that you can't represent to the court that it's inaccurate what's in the PSR, because it is accurate. And we have an ethical obligation to disclose what's accurate. What's accurately reported by the pre-sentence report. We got it wrong. And at that point, we should have said, okay, there's – we don't have an agreement because we can't make this recommendation. We're going to be in breach by just showing up at court because we've got it wrong. That's not really – you know, that's not how it played out. I mean, now this is, you know, after the fact. Quarterbacking, maybe we should have done this. But what really happened is what Judge Schwartz says the defendant's left with, I can't just leave this. Here's the agreement. You're going to come in and you're going to make, you know, this agreement on the distribution, this agreement on the acceptance. Then comes the pre-sentence report. He puts stuff in, and then he shows up, and lo and behold, he was right. Government jumped ship on the plea agreement. So, you know, he was damned if he did, damned if he didn't. I think it's a different thing when you say, okay, the pre-sentence report is – Well, let me just ask you this. What would – given the circumstances, what would be the problem if there is breach of the plea agreement with just setting it back and without instructions for re-sentencing? Well, we talked about it today. Why don't we just agree to 71 months? And if Judge Shea had given one month less, we wouldn't have had to be here. But in reality, it's a more fundamental issue. The defendant doesn't get to show up in court and make misrepresentations of the court, and the government has to sit by and say, well, we're just recommending this and we can't say anything more because we know that we were wrong, but we can't say anything more. When the defendant volunteers information that is inaccurate and the government has preserved through a plea agreement the right to argue for a high end of a guideline range, then we have a right to put on the evidence in front of the court to support that. And we also have a right to argue against acceptance of responsibility when a defendant provides misleading and false information to the court. So there was no breach here, and I think that's a fundamental thing. But I think what we've kind of glossed over, I think it was mentioned by Judge Clifton, but we have a plain error standard here. This was never raised in front of the district court. It was never brought up. It could have been resolved by the judge. The judge could have said at that point, well, look, the sentence isn't going to change. Your United Front doesn't matter. Well, it's clear it would be a plain error. So were substantial rights affected? I don't think they were. What do we have? The judge didn't change his mind in any way about acceptance of responsibility. He still gave it, regardless of what the government said. And as to the enhancements, he was going to give it one way or the other, because it was an accurate calculation and reading of the guidelines. And he said, even with those, I'm going to go way back to where, essentially, you were without those five levels. We're talking about one month, and the government admits that that's not substantial. What would you argue if the case went back on remand? I would argue just as I had. If he presents information at sentencing that he presented in this case, the government would point out the discrepancies. The government would point out the truth of the charge. And we would argue for a high-end sentence based on his history, based on the facts. In effect, you don't think anything changes.  And I'm kind of struck here. You suggest the alternative of what might have happened at the time is, basically, to leave you back out of the whole plea agreement. But that ship's kind of sailed by now. And so I sit there and wonder, OK, so if we would send it back, and presumably have to be in front of a different judge. But I see the whole scenario playing out in almost exactly the same way, except you wouldn't use the same words, because you don't want to have a complete replay. But the problem is that the sentencing discussion is triggered by the pre-sentencing report, which puts on the table a disparity with the understanding set forth in the plea agreement. Well, and I think that the plea agreement wouldn't exist as it exists now. If we go back for resentencing or, you know. That's what I want to know. The plea agreement would be a nullity on resentencing. You would say we're no longer bound by the plea agreement? I think we'd have to. We realize now, at this point, that there were errors in that. So we start out from scratch. We could take that affirmative step. But typically, the remedy, when you appeal based on a breach, is to strictly enforce the plea agreement. So that's not really a remedy that this Court can impose. But the problem is, if you went back and said there's no plea agreement, then he'd be entitled to withdraw his plea, wouldn't he? Because he entered the plea on the strength of the agreement. So it's really rolling the whole thing back to square one. Wouldn't he be entitled to withdraw the plea? That's where I think, if we get to that stage, that ultimate stage, that's where the concern under the plain error standard comes in for the government. And that is, that would be prejudicial to the government. Now we've gone so far afield, so many months, so many years beyond the case. We've relied on this plea agreement. He's been sentenced. And now we go back to where we have to try the case again. Well, telling us that you've relied on the plea agreement is probably not a winning play, if the problem comes from the fact that the government may not have adhered to the plea agreement itself before. So because if the government adhered to the plea agreement, you don't have a problem. You've got a problem for going back only if there's a determination that something went astray. And it's hard at that point for the government to say, well, we relied on this deal. We didn't adhere to. So I mean, if the government's got a problem because it can't prove the case anymore, I'm not sure that's a problem that's of anything other than the government's own making. Well, with all due respect, I think we did abide by the plea agreement. There was dishonest information provided to the court. Now, I hear your argument on that, but we're now hypothesizing, okay, what happens if it goes back? And we get there, I think, only if there's been a determination that there has been a breach of the plea agreement. So I'm not trying to disregard your argument that you shouldn't have the problem in the first place. I'm just saying, if we return to the scene, well, maybe we do even unroll the plea. If the premise of the plea is that the plea agreement would be adhered to, it wasn't. So we're back not just to resentencing. Are we all the way back to square one of, okay, there's no plea agreement. There's no plea. You've got an indictment. What happens next? Then you have the problem of whether his admissions at the time of taking the plea could be admitted in evidence in the further proceedings. It's a very naughty situation. And this is precisely why I think it's so encouraged in the case law that's been decided by this Court that this be resolved by the district court at the time. If there was a breach, let's bring it up. Let's resolve it then. I think they've waived it. They had every opportunity to bring that up in front of the district court. And here we are. Now we have this quagmire. He wants this enforced now. He did say it was at odds with the plea agreement, didn't he, in his sentencing memorandum? No. I don't know where he did. And it's not in this record. It's before this Court. I can tell you that. I've searched. I don't see anywhere where they say this is in violation of the plea agreement. He doesn't say that. He doesn't say that. Right. And there's no alleged breach that's ever raised in front of the district court. Just judge the PSRs wrong. Judge the PSRs wrong. And that's very different than the government. You've got to not only ignore your ethical responsibility to be truthful to the court and acknowledge that that's an accurate calculation by the PSR, but you also have to argue something you know to not be true. And that puts the government between a rock and a hard place. We did. In fact, we said, okay, here are the calculations. We abide by those, Judge. We agreed to those and we abide by those. Here's what went wrong. The defendant provided dishonest and untruthful information during the sentencing phase. So we, pursuant to the plea agreement, and again, in keeping with that plea agreement, can ask that you not give that acceptance of responsibility. The judge ignored that anyway and gave it. And then we can also say, okay, this five-level enhancement, we agree that the PSR is right, but we're not recommending that in terms of our guideline. We're abiding by the plea agreement. We're saying this is the guideline range. Sentence at that high end. Consider those five levels only as it relates to the guideline range without those five levels. That's how it played out. That was not a breach of our plea agreement. That was compliance with the specific terms of our plea agreement. So the government's position is that the appeal should be dismissed, that the issue was not properly preserved in front of the district court, and that's really where it should end, and the 72-month sentence should stand. Thank you. Thank you, Your Honors. I would point out a couple of things. Number one, a mistake of law, in other words, a mistake in calculating the guidelines, is not grounds to void the plea agreement. So the government's mistake in calculation of the guidelines does not give it grounds to back out of the plea agreement. Well, but if we remand, we'd be doing it on the basis of breach of a plea agreement, right? Right. And the So then they'd be resentencing. Well, the district court at that point in time has the option, has two options. It can either allow Mr. Connell to back out of the plea agreement, or it can provide for specific performance. And the specific performance is actually the lesser of the two remedies, and that's all we're asking for here is specific performance. Now, if the district court decides on remand to let the parties out of the plea agreement, that's actually a greater remedy, and we can get there, cross that bridge when we get there. But at this point, we're just asking for the lesser, and we would submit that the government hasn't submitted grounds to back out of the plea agreement at this point in time. Now, the government says that we can't sit there silently when the guidelines were miscalculated. But in Gunn v. Ignacio, which is a Ninth Circuit 2001 case that I cited in my brief, and that was a habeas case, the Court held that for a prosecutor to tell a judge it's sentencing that he concurs in the pre-sentence report is an argument for sentencing in accordance with that pre-sentence report when it goes against the plea agreement. So for the government to come up and argue at sentencing in this case that the pre-sentence report is correct and the plea agreement was incorrect, that violates the plea agreement. Now, the government says, well, we have an ethical obligation. Yes, they do, but the difference here is that the government jumped in and volunteered that the plea agreement was inaccurate. The government can stand by and remain silent unless it is asked by the district court, government, is the pre-sentence investigation calculation accurate? And then the government has an ethical obligation. Yes, it's accurate, but that's not what happened here. The government jumped in, it volunteered information that it knew about when it agreed not to recommend the distribution enhancement. So the government could have stood there at sentencing and the district court said, you know, government, is there evidence of a distribution, and the government could have said, look at the plea agreement, there's facts in the plea agreement that support the enhancement, but they didn't do that, they went over the top. They introduced a whole bunch of additional evidence to support the enhancement, evidence that it knew about at the time that it entered into the agreement. With respect to the acceptance of responsibility, I read the district court saying, well, I've made the first two findings, the third one is up to you. Right. Is that true under the way that that guideline operates? It is, Your Honor. We brought that up in our reply brief, and there's an Eighth Circuit case that specifically addresses that. You're saying it's not true. In other words, it's not – once the government – once the district court makes the first two findings, then does it remove the discretion of the prosecutor with respect to the third based on the plea agreement? Yes. Once the district court removed or grants those two points, the government has the obligation then to move for that third point. And there's an Eighth Circuit case that we cite in support of that because the only reason for withholding the third point is that the plea was untimely, and there's no indication or allegation by the government in this case that the plea was untimely. So the district court in this case found that Mr. Connell was being truthful and complete in his plea agreement. The court found that, and therefore, the government's obligated to move for that third point. It didn't. It withheld that third point in this case. So – and I would suggest, Your Honor, and this is in the briefing, that Mr. Connell – you know, I mean, his arguments were strictly legal. The pre-sentence investigation report came out and said that the distribution enhancement should apply because he put these pictures on – in a folder that was accessible through a CAZA, you know, a peer-sharing network. And Mr. Connell came back and said two things. Number one, the plea agreement didn't provide for this. And number two, putting folders in a peer-sharing folder is legally insufficient. That's what he said. And based upon that argument, the government came back and said, Mr. Connell personally is not being truthful. And that's where it throws in all this additional stuff. So it was a legal argument made by his attorney. There were no additional factual assertions on the part of Mr. Connell. He never backed out of his statements. So it's disingenuous to say that he was not being truthful. Of course, he – Mr. Connell never changed his position. The attorney was making a legal argument. Kennedy. Come back to your point about specific performance. I take it that all this Court can do is to order remand. It would be up to the district court to determine what – and you can ask for it, and up to the district court to determine whether specific performance should be ordered and in what terms. That's correct, Your Honor. The only thing that we would ask for is a little bit of guidance, because obviously the government feels that it didn't breach the plea agreement, and if remand for resentencing was presented and specific performance was ordered, the government may do exactly what it did in this case, and, you know, we may be right back up here. So guidance by this Court would be helpful in that sense. But, yes, the remedy would be left up to the district court, the lesser of those two being specific performance. Thank you. Thank you. Thank you for your arguments this morning. The case of United States v. Connell is submitted. Our last case for argument this morning is DeVincentes v. Quinn.
judges: McKeown, Clifton, Schwarzer